CROSS, Chief Judge
(dissenting):
I must of necessity respectfully dissent.
Appellants-respondents, Harry C. Hick-son, Chief Building Inspector of the City of Fort Lauderdale, the City of Fort Lau-derdale, a municipal corporation of the State of Florida, Edmund R. Burry, Fred E. Welker, Harrison L. Friese, James L. Leavitt and Allen B. Forbes, as and constituting the City Commission of the City of Fort Lauderdale, Florida, appeal from a final judgment granting a peremptory writ of mandamus directing the issuance of a building permit to the appellee-relator, Woodridge Building Corporation, a New York corporation.
In 1964 the relator, Woodridge Building Corporation, applied to the respondent, City of Fort Lauderdale, for rezoning of a certain tract of land owned by the relator in the City of Fort Lauderdale from an R-l category, which is single family residence, to an R-3-C zoning, which is a planned multiple residence. Public hearing was held before the planning and zoning board on July 7, 1964.
Prior to the public hearing meetings were held between the relator, the respondent-city and the property owners whose property was adjoining or closely adjacent to the relator’s land. These meetings were to assure these property owners of exactly what would be placed on the property adjoining or closely adjacent to their homes.
At the public hearing the relator sought approval for plans calling for fifty buildings of two stories in height, containing three hundred units for occupancy. Upon the close of the public hearing, at which the development plan was presented and explained, the planning and zoning board passed the following motion for rezoning:
“Motion by Crawford, second by Caldwell, that the Board recommend to the City Commission that the application be approved and the site plan be approved *235 subject to the dedication of canals as shown on the plot plan; also subject to the deeding of the T strip of property to the adjacent property owners free of charge, on the north and south boundary of the property; all buildings constructed on the property shall be limited to 2 stories in height and a minimum of IT of landscaped area west of proposed maximum right-of-way along S. W. 9th Ave. Motion carried unanimously.”
Thereafter the property was recommended for rezoning to the city commission, and the city commission based upon the said recommendation on August 4, 1964, rezoned the property to R-3-C, planned multiple residence.
On January 2, 1968, the relator, Wood-ridge Building Corporation, requested approval by the planning and zoning board of a plan, which was a modified or revised development plan from the one presented to the planning and zoning board on July 7, 1964. The relator submitted proposed plans for construction of six buildings on the property, five stories in height, with a total of 666 residential units instead of the fifty buildings of two stories in height containing three hundred units for occupancy in the plan submitted to the planning and zoning board on July 7, 1964.
Adjacent property owners appeared before the city planning and zoning board at its meeting on January 2, 1968, and objected to any changes as were proposed. The primary bases of the objections were the departure from the concept approved when the property was rezoned in August 1964. The minutes of the January 2nd meeting reflect that the planning and zoning board found that the development plan was in conformity with the zoning restrictions and approved the plan.
Thereafter the property owners aggrieved by this approval sought a hearing before the city commission to review the actions of the planning and zoning board. A public hearing was held before the city commission on January 30, 1968. This pub-lie hearing was called to consider the new plans for the development of relator’s property and to review the entire matter, and particularly to review the actions of the planning and the zoning board wherein it had approved the so-called modified development plan. The city commission was fully apprised of all the various aspects of the modified development plan, and thereafter by a three-to-one vote, one member abstaining, disapproved the so-called modified development plan and set aside the ruling of the planning and zoning board.
Following the disapproval by the city commission of the modified plan, the respondent-chief zoning inspector for the city refused to issue a building permit based on the modified plan. Thereafter the relator, Woodridge Building Corporation, filed a petition for writ of mandamus seeking to compel the issuance of the building permit. The relator in essence alleged that the re-pondent-city commission of the Respondent-City of Fort Lauderdale had no statutory, charter, ordinance or common law right or jurisdiction to review the relator’s modified development plan; or in the alternative, if it had any such right or jurisdiction, by voting to disapprove the relator’s modified development plan on the basis of the record before it, such right or jurisdiction was exercised in an arbitrary and capricious manner contrary to the facts and in contravention of the law relating to such review.
The lower court issued an alternate writ of mandamus and the respondents answered thereto. On March 4, 1968, an amended alternate writ of mandamus was issued, and respondents filed a further answer.
The cause came on then for hearing for the issuance of a peremptory writ of mandamus, and the court found:
“ * * * [Tjhat the City Commission did not have the power to review the new or modified development plan in the absence of express ordinance authority; the Court further finds the ordinance and *236 Article 4B, Section 47-65.02 thru Section 47-65.10 of the Code of Ordinance of the City of Fort Lauderdale does not violate any constitutional guarantee and is not invalid as an improper delegation of authority; the Court further finds that the Planning and Zoning Board did act upon the new or modified development plan in accordance with Section 47-65.02 thru Section 47-65.10 recited above, and that said Board did duly approve the new or modified plan. * * * ”
The court issued the peremptory writ of mandamus commanding the respondents to issue to the relator a building permit for the construction of the improvements referred to and described in the amended alternate writ of mandamus. It is from the final judgment granting the peremptory writ that the respondents now appeal.
Mandamus is a remedy for the purpose of supplying defects in justice; it does not supersede legal remedies. 21 Fla.Jur., Mandamus, § 15. To warrant the court in issuing the writ it must appear that the complaining party has a clear legal right to the performance of the particular duties sought to be enforced and that he has no other plain, adequate and complete method of redress or of obtaining the relief to which he is entitled. State ex rel. Attorney General v. Johnson, 1892, 30 Fla. 433, 11 So. 845, 18 L.R.A. 410. Mandamus is not an appellate procedure. City of Miami v. State ex rel. Houston, Fla.App.1960, 120 So.2d 459.
Since the right to mandamus as an extraordinary remedy is to be determined, as of the date that the relators filed, see Department of Public Safety Driver’s License Division v. Mitchell, Fla.App. 1963, 152 So.2d 764, and the writ will only lie when there is no other remedy to the relator, inherent in every decision concerning mandamus is whether mandamus was the proper remedy for the relator initially.
It is customary in zoning to provide certain guarantees of citizen participation, and the Florida -Enabling Act, F.S.. 176, F.S.A., is no exception. A municipality seeking to enact a zoning ordinance must establish a zoning commission. The respondent, City of Fort Lauderdale, did so in the instant cáse naming its commission the City Planning and Zoning Board. This body has the function of investigating, making recommendations and suggesting appropriate regulations. According to F.S. 1967, Section 176.07, F.S.A., a zoning commission is to make a preliminary report and hold public hearings thereon before submitting its final report to the governing body, and the governing body of the said municipality shall not hold its public hearings or take action until it has received the final report of such commission.
A zoning commission is an advisory board. It has been uniformly held that the powers of zoning commissions are to study the zoning needs of the municipality, to give notice, to hold hearings, to formulate a comprehensive plan, to incorporate it in a proposed ordinance and recommend it to the city council. 8A, McQuillin on Municipal Corporations § 25.224. In reading F.S. 1967, Section 176.07, F.S.A., it becomes evident that the zoning commission is an instrument of preliminary adjustment for it must be appointed by the municipality if that municipality is to avail itself of the power conferred by the enabling act.
A purpose of the zoning commission is to allow property owners to make their desires known before any final action on the zoning regulation is taken by the city council or the city commission. Thus it is hoped that any resulting ordinance would be more likely to represent a consensus of community opinion than if the city council acted without preliminary study. The only logical conclusion from a reading of the enabling act is that the legislature intended for the zoning commission to be an advisory body only.
In the instant case, the Fort Lauderdale Code § 327 states that the duties of the city *237 planning and zoning board shall be as follows : • ■
“(a) To act in an advisory capacity to the city commission, to conduct investigations and to hold public hearings upon all proposals to change zoning regulations of the City, or to vacate and abandon streets and alleys, and to report its findings and recommendations upon such proposals to the city commission.
“(b) To study an existing city plan with the view to improving same so as to provide for the development, general improvement, and probable future growth of the City, and from time to time make recommendations to the city commission for changes in the existing city plan so as to omit portions of such plan not deemed advisable and to incorporate new developments in keeping with the growth of the city. At least once each year, as near to May first as practicable, it shall submit to the city commission recommendations for changes in the existing city plan.
it * * *
“(e) To investigate and approve or disapprove all new plats intended to be presented to the city commission for approval.” (Emphasis added.)
It is evident from the foregoing duties that the city planning and zoning board of Fort Lauderdale is but an arm of its city commission. Thus the final determination in the matter does not lie with the city planning and zoning board but with the city commission. If a party is aggrieved by an action of the city commission acting upon a recommendation of the city planning and zoning board, the aggrieved party’s remedy lies to review the final determination of the city commission, not to compel the recommendation of the city planning and zoning board.
The City Commission of Fort Lauder-dale, Florida, held a public hearing on July 30, 1968, to consider objections by affected property owners to the relator’s modified development plan. In this capacity, the city commission was exercising its “judicial or quasi-judicial” authority in that due notice of the hearing was given to the parties, they were provided a fair opportunity to be heard and be present in person or by counsel. Relator’s petition for alternate writ of mandamus brings forth the fact that they were present and were heard. The minutes of the said meeting reflect the disapproval of the relator’s modified development plan.
Thus the entry of the disapproval in the minutes of the said meeting must be treated as a final judicial or quasi-judicial, administrative order rendered by an administrative agency of last resort, i. e., in this case the city commission. The relators, therefore, have a remedy for judicial review of the order evidencing the disapproval by the city commission of their modified development plan. The correct method of review is not by mandamus, but by petition for common law certiorari to the appropriate circuit court pursuant to subsection (3), § 6, Art. V of the Constitution of the State of Florida, F.S.A. Board of Public Instruction of Duval County v. Sack, Fla. App.1968, 212 So.2d 819.
To grant mandamus in the instant case usurps the power and duty of the city commission as representatives of the citizenry of Fort Lauderdale in controlling for the people of the city the public safety, welfare, morals and health. It gives to a purely advisory body the final word in all zoning matters. Such was not the intent of the legislature in promulgating F.S. Section 176, F.S.A., nor does the general law throughout the United States adhere to that proposition.
I would reverse and remand the cause with directions to quash the writs, discharge the respondents, and dismiss the action.